First case for argument this morning, November 19, 2025, 25-1383, Eastern Missouri. Express Scripts, et al. v. Federal Trade Commission, et al. All right, Mr. Volchak, we'll hear from you first. Good morning, and may it please the Court, Daniel Volchak for the Plaintiffs. Your Honors, we filed this case to challenge the constitutionality of a proceeding that the Federal Trade Commission brought against us in its own court. The District Court denied our request to preliminarily enjoin the proceeding, but that denial should be reversed for two principal reasons. First, we will likely succeed on all three of our constitutional challenges to the proceeding, although likely success on any one suffices for these purposes. And second, we showed that without an injunction, we will likely suffer irreparable harm. In fact, we showed we would unquestionably suffer such harm. So starting with likelihood of success, I plan to go through our three challenges individually, but I do want to note at the outset that there is a through line connecting them. Our overarching argument is that Congress has impermissibly given the FTC power that the Constitution assigns to the courts, that's our Article III claim, and to the President, that's our Article II claim. And that with that power, the FTC is bringing coercive, highly consequential internal proceedings against private parties, proceedings in which, and this is our due process challenge, it has in recent years always ruled for itself. So there's that relationship among the three claims, but as I say, they are independent for purposes of likelihood of success analysis. Okay, beginning with Article III. The FTC proceeding violates Article III because the agency is adjudicating our private rights outside of an Article III court. The Supreme Court reaffirmed last year in SEC v. Jarkissi that, quote, adjudication by an Article III court is mandatory. End quote. That's page 128 in Jarkissi, the U.S. reports. There's no doubt that the FTC proceeding here, I submit, is in the nature of an action at common law. We've cited many cases showing that claims like unfair competition have long been adjudicated by courts at common law or courts at equity, which Jarkissi also covers. And the few cases that the FTC cites on this point actually confirm that conclusion. Those cases likewise recognize the doctrine of unfair competition at common law, and they simply address when particular plaintiffs can bring such claims. Now, that is not relevant under Jarkissi. The Supreme Court said that what matters is the substance of a suit, not, quote, where it has been brought, who brings it, or how it is labeled, end quote. And that's page 135 in Jarkissi. Now, if more were needed, the FTC proceeding is adjudicating plaintiffs' contract rights. Indeed, the relief that the FTC seeks could well require the reformation or abrogation of plaintiffs' thousands of contracts with health plan sponsors and pharmaceutical manufacturers. And that makes the Article III violation unmistakable because the Supreme Court has described contract rights as, quote, paradigmatic private rights, end quote. That's the Grand Financiera case. It's quoted on page 38 of our opening brief and page 15 of our reply brief. Now, in response, the FTC relies principally on the public rights exception, the exception allowing certain public rights to be initially adjudicated outside Article III courts. But Jarkissi made clear that that exception has to be interpreted narrowly because it is wholly atextual. And that exception does not apply here because there is no history of claims like unfair competition being adjudicated exclusively, and that's Jarkissi's word on page 128, exclusively outside of Article III courts. Indeed, the FTC doesn't argue otherwise, and we submit that that is dispositive. Now, the FTC's remaining arguments are likewise foreclosed by Jarkissi itself. For example, the FTC points to various differences between FTC Act claims for unfair competition and common law claims. But there were similarly differences in Jarkissi between statutory and common law securities fraud claims. For example, the Supreme Court noted that securities for statutory claims, the SEC did not have to show harm, and there was a lower standard of proof than was often employed at common law claims. The Supreme Court, excuse me, said those differences don't matter. What matters is that the claims, quote, target the same basic conduct, and that's page 125 in Jarkissi. The same is true here. Indeed, we have cited Supreme Court precedent showing that the FTC over time has often looked to the common law, among other things, in determining whether a particular practice violates the unfair competition provisions of the FTC Act. Next, the FTC says that its adjudications are constitutional because it's been doing them for over a century. Footnote 2 of Jarkissi, the very end of that footnote, refutes that argument as well. The court says the absence of challenge by one generation cannot waive the rights of a later generation. Finally, and along the same lines, the FTC cites cases from the 1920s that rejected this or that challenge to an FTC adjudication. But most of those cases never even mentioned Article III, and none of them, none of the binding precedent, I should say, that the FTC cites rejects our Article III argument. And importantly, that includes this court's decision in Arkansas Wholesale, which is what the district court relied on. Arkansas Wholesale was a due process challenge. It did not mention Article III. It did mention due process. And as our briefing said, no case that we're aware of in the century since Arkansas Wholesale was decided has read Arkansas Wholesale until the district court decision in this case as being an Article III case, much less rejecting our Article III challenge. It doesn't even reject our due process challenge, as I'll get to in a moment, but certainly not our Article III challenge. Your Honors, our second challenge is that the statutory restrictions on the President's authority to remove FTC commissioners and administrative law judges violate Article II. Now, to show likely success on this claim, we only have to be right as to one of those, that is, ALJs or commissioners. But the FTC actually agrees with us as to both, and I'll come back to that in just a moment. The district court, however, disagreed as to both. Now, as to commissioners, the district court relied on the Supreme Court's 1935 decision in Humphrey's Executor. But the Supreme Court explained just a few years ago in Selah Law that Humphrey's Executor represents, at most, the limit of the restrictions that Congress can constitutionally place on the President's removal authority. And the FTC today exercises far greater executive power than it did at the time of Humphrey's Executor. Because of that, that means the statutory restrictions impose a greater limit on the President's removal authority, and under Selah Law, they cross the constitutional line. Now, as to ALJs, the district court relied on what Selah Law called one of, quote, only two exceptions to the President's unrestricted removal power, end quote. That's page 204 in the U.S. Reports. Now, this exception allows removal restrictions for certain inferior officers of the United States who have limited duties and exercise no significant policymaking or administrative authority. But that exception does not apply here for two independent reasons, both of which the Fifth Circuit has repeatedly recognized, in jarcossy, bless you, as to the SEC ALJs, and more recently in space exploration as to NLRB ALJs. The first reason is that the Supreme Court, which has only ever applied this exception twice, has applied it only where there was one layer of removal protection. And in the Free Enterprise Fund case, the court declined to apply the exception precisely because there were, as there are here, multiple layers of removal protection. The court said that for purposes of constitutional analysis, quote, the added layer of tenure protection makes a difference. That's page 495 in the U.S. Reports. And it makes a difference because the extra layer means that officials are even more insulated from the president and hence from the public, so undermining democratic, small-D democratic principles. And it makes it even more difficult along the same lines for the president to fulfill his constitutional obligation to ensure that the laws are faithfully executed. The second reason the exception does not apply is because FTC ALJs are not inferior officers who have limited duties and no significant policymaking or administrative authority. So, for example, in Morrison v. Olson, which is one of the only two Supreme Court cases applying this exception, the Supreme Court said that the independent counsel had limited duties in part because it was a temporary position appointed to essentially carry out one task after which the position was terminated. ALJs, FTC ALJs, by contrast, adjudicate case after case. It is a continuing position. And they have significant administrative and policymaking authorities. We've cited Supreme Court precedent, for example, the NLRB v. Bell Aerospace case from the Supreme Court, explaining that agencies can and do use adjudications, of course overseen by ALJs, to make policies. So, again, two independent reasons why this exception doesn't apply, meaning the removal restrictions are unconstitutional. Do you think if the ALJs were appointed temporarily, then they'd be okay? Well, it would certainly make a difference in terms of the limited duties, Chief Judge Colleton. Now, to fit within this exception, you have to satisfy we submit all three of the requirements, that is limited duties, no significant policymaking authority, no significant administrative authority. We think they have administrative and policymaking authority. And, of course, this is our second reason, independent of the multiple layers reason. But I think, to answer your question directly, it could affect the analysis as to whether they were considered officials with limited duties. Do you think an ALJ has more policymaking authority than an independent counsel who can charge someone with a crime and prosecute someone? Yes. So I think the Supreme Court's decision in Morrison viewed the independent counsel's duties as falling much more in the nature of law enforcement, which it seemed to regard as separate from policymaking. ALJs, I completely get that these are nebulous lines, and there could well be arguments that this or that office has policymaking authorities. Our view of what we submit is relevant for the policymaking part. Again, we have our other arguments on limited duties, administrative, and multiple layers. You weren't getting any questions. I wanted to give you something to talk about. Thank you, Chief Judge. Could you address the compensable harm requirement in Collins and Boddy? Yes. So what the FTC says, as I said, the FTC agrees with us that the removal restrictions are unconstitutional. That's why I'm asking about this. Exactly. Well, our position is because they agree with us that they're unconstitutional, they're actually agreeing with us on the merits. But they are making this argument that you just alluded to, Chief Judge Colleton, that under Collins and Boddy, we are required to show compensable harm in order to get a preliminary injunction. Now, in our view, that is improperly importing remedy issues into the merits analysis. What remedies we could or could not get in the event that we were to prevail on the merits, that is, a court were to declare statutory removal restrictions unconstitutional, is, in our view, separate. But in any event, both Collins and Boddy were about retrospective relief, an attempt to avoid an already completed agency action. In fact, the Supreme Court said in Boddy, excuse me, the Supreme Court said in Collins, that, quote, the only remaining remedial question, end quote, in that case was retrospective relief because the plaintiffs there, quote, no longer had a live claim for prospective relief, end quote. So as the Fifth Circuit recognized just recently in Space Exploration, which was also a preliminary injunction appeal, Collins doesn't say anything about the requirements to get prospective injunctive relief on an Article II claim like ours. And the same is true of virtually every other case that the FTC cites on this point, including, most importantly, as you alluded to, Chief Judge Colleton, this court's decision in Boddy. Boddy was very much like Collins itself, FHA case, challenge after the fact to an agency action. So it was also about retrospective relief, indeed. The only case that Boddy cited for the proposition that Collins requires a showing of this link between the unconstitutional removal restriction and the challenged agency action was the Fifth Circuit's decision in Community Financial Services Association of America. And just recently, the Fifth Circuit, that same court, in Space Exploration, explained that Community Financial Services Association was like Collins about retrospective relief and that it does not apply in a case seeking a preliminary injunction. And hence, the Fifth Circuit in Space Exploration, in a published decision from just a few months ago, went on to uphold the issuance of three preliminary injunctions based on our same Article II claim, the same result should obtain here. I have two questions. The first one is this. Do you have a case in which, and I think I know the answer to the question before I ask it, do you have a case in which a court of appeals upheld a preliminary injunction or reversed a district court's denial of a preliminary injunction against an ongoing agency proceeding based on a structural constitutional challenge? Yes, Judge Shepard. It is the Space Exploration case that I just mentioned. So these were actually consolidated appeals. Three district courts had each individually issued preliminary injunctions against ongoing NLRB proceedings. And the argument was the exact same challenge that we make, the exact same Article II challenge, I should say, that we make to the constitutionality of the removal restrictions. Okay. And I knew that was going to be the answer. Okay. The second question is, are there any others? Not that I'm aware of so far, Judge Shepard. So because of that, doesn't that really caution extreme, extreme care and hesitancy on the part of a court to sustain this kind of challenge on a preliminary basis? I don't think so, Judge Shepard. If that's only the case where this kind of attack has been successful with respect to a preliminary injunction, it doesn't give me, personally, it doesn't give me a lot of comfort and reassurance that this is really an area that we need to be getting into on a preliminary basis. So, of course, any preliminary ruling would simply be, have we shown a likelihood of success? That ruling could be revisited as the case proceeded, discovery, trial, et cetera. But we believe that the unconstitutionality of the removal restrictions and separately the Article III violation flow directly from the Supreme Court precedent that I've been talking about the last few minutes. And I guess I'm not aware of case law saying that a court should not be the first, or in this case the second, to uphold the issuance of a preliminary injunction. Recall, of course, we also have to show, in addition to likelihood of success on at least one of our claims, likely irreparable harm in order for injunctive relief to issue and also that the third factor weighs in our favor. And I'll talk briefly about those. We believe we have shown both of those. Irreparable harm is quite clearly shown under Axon Enterprises versus FTC, which says that being subjected to an unconstitutional agency proceeding is, quote, a here and now injury, end quote, one that, quote, is impossible to remedy once the proceeding is over, end quote. And the district court actually agreed with us that we have shown irreparable harm under Axon. It believed that this court's precedent imposes a requirement of great irreparable harm. The government has not defended that. We believe we've articulated why there is no such requirement under this court's precedent. And then on the third factor, if I could just speak to quickly the balance of harms and the public interest, the district court's analysis of this factor rested on the notion that granting a preliminary injunction to us would prevent the FTC from carrying out the work that Congress has assigned it. FTC's brief in this court sounds the same thing, but it's simply not correct. If a preliminary injunction issues, the FTC could bring any and all claims that it would otherwise bring in its own court in an Article III court. And the defendants there, just like the respondents in an internal adjudication, would have whatever arguments about the claims being outside the scope of Section 5. But the FTC can continue doing all the work that Congress has assigned it, so there is no harm to outweigh the irreparable harm we are suffering. And with likelihood of success in irreparable harm, a preliminary injunction is warranted. And unless there are questions, I'll save the rest of my time for rebuttal. Very well. Thank you for your argument. Mr. Aguilar, we'll hear from you. May it please the Court, Daniel Aguilar for the FTC. So just starting off with the removal claim. That's fundamentally different from an Appointments Clause claim, and I think that's helpful for understanding the compensable harm analysis, right? The Court explained this in Collins v. Yellen. When you're saying somebody hasn't lawfully possessed authority to exercise the powers of an office, what you're saying is everything they're doing is tainted, it's void of an issue, and that's why you can get a vacater or an injunction based on what they're doing. But a removal claim is different, as this Court explained in Boddy too. What that's saying is you are lawfully exercising the powers of the office, but if there is a removal restriction that inhibits the President's capability to take care that the laws be faithfully executed and thus the executive power in him, then there might be some harm that has a nexus to the challenged action. But you have to show that causal nexus. And this Court in Boddy is explaining that side in not just the Fifth Circuit's decision, but the Second Circuit's decision, and indeed almost every other court of appeals decision holding, you have to make the showing of harm. Because if what the agency is doing is exactly consistent with how the President wishes executive power to be wielded, there's no harm. There's nothing that the unconstitutional removal restriction is doing to the regulated party in the proceeding. The President wishes the laws to be executed this way and his subordinates are fulfilling those wishes. It's when you have to show that there is actually something more there. So if, for example, as the Court in Collins was explaining, the President removes an officer and then a court reinstates that officer based on an unconstitutional removal restriction, saying the President needed to show some cause and there wasn't here, that person can continue in office, well then maybe that person is exercising authority in contrast to the President's wishes. That could be a showing of compensable harm. But that's not what plaintiffs allege here. They say they don't need to show compensable harm. What they say is that they're entitled to a preliminary injunction now solely based on the existence of an unconstitutional removal restriction without any showing that the President is displeased with the FTC's current actions. And I think the posture of this case speaks to that, right? This administrative complaint was issued in 2024 and continues today. The President has removed two FTC commissioners, notwithstanding the removal restrictions, which we agree are unconstitutional on the merits. That case was before the Supreme Court. But the remaining commissioners who have the President's trust continue to oversee this administrative complaint. There's been no showing that the President is displeased with how this adjudication is going. And so I think the only way that they're entitled to any kind of injunction is, absent compensable harm, showing the entire statutory scheme is just unworkable. The removal restrictions are so integral to the entire operation of this that they can't be severed. And therefore, because the statute's unworkable, you can't go forward. But they haven't made that claim, and I don't think that that would be the appropriate response. In every case where there has been an unconstitutional removal restriction, the courts have responded by severing it, setting it apart from the remainder of the scheme, and allowing the agency to continue to wield the executive power that Congress has granted it. And if that got to final judgment, that would be the appropriate remedy here, right? But if they're not entitled to an injunction at final judgment, there is no basis on which they're entitled to greater relief at a preliminary posture. And that's why this Court denied a stay pending appeal in this case. It denied a stay pending appeal in the H&R Block case. Other courts of appeals have denied stay pending appeals based on similar removal challenges when there's been no allegation of compensable harm. And Justices Kavanaugh and Gorsuch, not shrinking violets when it comes to separation of powers issues, similarly denied stays pending appeal in the cases of Yap and Leachco. And I think that's just confirming the fact that when you haven't shown compensable harm, you're not entitled to preliminary relief. Moving on to the Public Rights Article 3 analysis, I hear my colleagues saying that there are cases in which unfair trade practices were established at common law and equity. But I would take the words of those who were adjudicating those cases at the time, Justice Bradley of Writing Circuit in New York, Rosendale Cement, and the Sixth Circuit's decision in American Washboard Company. There the claim was, there is an unfair trade practice going on. Somebody is trying to pass off goods as our own. Now, the Court said, you don't have a private right there. There's no trademark that you possess. There's no privity of contract. There's no fraud. So although what the people you're suing, they might be doing a great moral disservice. It might be the selling of spurious goods. It might be harming the public. But there is no claim to common law or equity for this. If somebody is going to do something about it, as Justice Bradley wrote, it needs to be Congress. It needs to be the legislature. So at the time the FTC Act was passed, there was no preexisting common law or equitable cause of action. That's why Congress had to pass the FTC Act. It created the FTC and then it said, the FTC has authority to adjudicate these kind of claims for unfair methods of competition and commerce. And it can make factual findings that will then be reviewed by the Courts of Appeal. In Arkansas Wholesale Grocery, the claim was, when the FTC is finding those facts, it acts unconstitutionally. So the Court needs to find those facts in the first instance. That's relevant because that is the Article III analysis, right? If something is a matter of private rights, both the facts and the law need to be determined de novo in an Article III court. That's why the Supreme Court's decision of Article III analysis in Stearns v. Marshall comes out the way it does, right? It says, if it's a matter of public rights, the Bankruptcy Court can do it. But if it's private rights, the Bankruptcy Court cannot find any facts. That has to be done by an Article III court. So in this court, the Seventh Circuit, the Sixth Circuit, and others are saying, of course the FTC can find facts. Of course it can make that initial determination of both fact and law. And in the Seventh Circuit case, McLean, citing this court's decision, says that defeats your Article III analysis, that defeats your Article III claim, your challenge to the FTC. That's just confirming that everyone at the time understood these are constitutional challenges to the agency finding facts, which is what claims challenge here, that the FTC cannot find facts or make decisions of law because it's a private right. That claim has been rejected for more than a century. And there is no basis on which to depart it here. I think plaintiff's strongest try is saying that JARCASI fundamentally changed the law. It changed the public rights analysis, and so those cases are no good. That's inconsistent with how JARCASI itself understood what it was doing. It said, Gran Financiera, a case from the 1990s, effectively decides this case. Gran Financiera and JARCASI both draw their precedent from cases from 1909 in the oceanic steam navigation. They take it from Crow versus Benson in the 1930s. They take it from cases at the time concurrent with these decisions by this court in Arkansas Wholesale and others, understanding what the public-private rights analysis is. And indeed, in Crow versus Benson, when the court is explaining what public rights are, it says a familiar illustration of it is FTC versus international shoe, where the court explained when the FTC is making and determining antitrust claims and claims under the FTC Act, under Section 5, as here, those are matters of public right. And that just confirms the district court's analysis here. What do you think about this argument that American Wholesale is only a due process case? I think, admittedly, it doesn't explicitly say that this is an Article III case, but I also don't think it's saying we're limited to due process. The relevant paragraph, I'm sorry. It refers to the constitutionality. It does, and I wasn't able to find the briefs on this point, so I don't know exactly what the party presentation was to it. But I think you can read what they're saying is the constitutionality of the FTC is it's unconstitutional because the FTC is making conclusive findings of fact. You could read that as a due process claim. You can also read it as an Article III claim. I don't think you need to say that Arkansas Wholesale solely binds us here. I think you take that with the weight of other precedent that was being issued at the time, including the Seventh Circuit's decision that says these constitutional challenges, including there, a very explicit Article III challenge to the FTC's adjudication, have been discussed so many times that it's not even worth substantively engaging with here, inciting this court's decision in Arkansas Wholesale. But I think if you wanted to go from first principles, the easiest answer would be we're going to take Justice Bradley and Judge Day of the Sixth Circuit, sitting with Judge Taft at the time, their word on it, that there was no common law or equitable cause of action. And that's the public-private rights distinction, right? Jarcusy says we're drawing from the common law, we're adopting its theories of liability, we're explicitly putting it into the statute, we'll look to it for precedent, etc. And then we're going to impose money damages. That's a private right of action. There are no money damages here. It's a cease and desist order that could potentially be issued. It's something that private individuals couldn't bring at common law lest they have a privity of contract or trademark, which is not at issue here, right? The claims here are there's been a method of competition that allegedly has caused some prices to increase before they reach consumers, that rebates will increase, and that plaintiffs will profit from that at the expense of other consumers who don't have a contractual relationship to them. That's not something that preexisted at private right. And Congress is permitted to create things that are new and unknown to the common law and thereby make them public rights. So take, for instance, immigration or taxation. Those cases in immigration or taxation may involve private contracts, contracts to bring people into the United States, contracts to create a potentially unlawful tax shelter. But that does not mean then that the executive is prohibited from adjudicating those disputes when Congress has constitutionally assigned that authority to the executive branch. And finally, on due process, I think that claim is foreclosed by the Supreme Court's decision in Smith v. Sorensen and others. Essentially, their claim is the combination of functions, initiating an adjudication and then adjudicating it, violates the due process clause. That's been foreclosed by Supreme Court in this court precedent. I think the way they try to say that that's not the case is by citing two particular statistics saying that the SEC has prevailed in a particular number of cases over a particular number of time. From what I take it, their claim is that over eight years, the FTC initiated and determined liability in about 12 or 13 cases. The statistics by themselves do not present a due process violation. I don't understand them to have identified any precedent finding a due process violation based solely on statistics. But even if that were the case, this court in Perkins v. Estrue, a Social Security case where there is a combination of functions held, mere statistics do not give rise to a due process violation. And there it cited a particular case where an administrative law judge in the Social Security Administration had denied claims, I think, 93% of the time. And I think that that reasoning fully applies here. You wouldn't say that a district court over eight years, if it found criminal defendants guilty in a bench trial in 13 out of 13 cases, is necessarily biased against criminal defendants. It might just mean that the prosecutors are bringing exceptionally strong cases where there actually is going to be liability. And there was a time before when the FTC brought many cases, and the FTC determined liability in not very many of them. I think only about 60% of them. Most of those were getting overturned. The FTC now brings far fewer cases and holds liability in several of them. And I think it was in the Justice Gorsuch and Axon was considering these same statistics. He cited to an amicus brief filed by the American Antitrust Institute that walked through these figures at greater depth. And there it said of the 12 or 16 cases that we're looking at, 90% of them were upheld on petitions for review. So in those cases where the FTC found liability, the courts of appeals were agreeing with those. And in almost all of those cases, the issues were legal rather than factual. I think that just underscores, even if you do consider the statistics, they do not support a due process claim. And because of the weakness of plaintiff's claims on the merits, that then also goes to their claim of irreparable harm. They say that under Axon, they've already demonstrated irreparable harm. We don't agree with that. The Axon court was saying what you get is district court jurisdiction now. You don't have to wait for the proceedings to end to bring your claim. You can sue district court to try to get an injunction. There is jurisdiction for that. We don't contest that. There was district court jurisdiction here for their claims. But then they say we get irreparable harm out of that. Well, that can't be the case. One of the claims in Axon was a combination of functions claim. It was saying Withrow v. Larkin was wrong, that that thing is unconstitutional. That might get you district court jurisdiction to hear that claim in the first instance, but that doesn't mean that the district court can overrule Withrow v. Larkin and actually say a combination of functions is unconstitutional. Withrow v. Larkin was very considerate on this and said, look, this is a serious issue. How you divide and combine adjudicatory rulemaking, enforcement authority is a serious issue. Congress has thought about this a lot. It's part of the Administrative Procedure Act. But no system has been set up to conclusively determine this, and we leave that to Congress. It's not a constitutional issue. Indeed, in the Social Security Administration, right, the commissioner can initiate an enforcement action for overpayment or fraud and then adjudicate that dispute. That doesn't violate due process. Similarly, if the attorney general initiates a removal proceeding against someone unlawfully present in the country and then ultimately adjudicates that, that does not indicate that there has been a fundamental constitutional violation of due process. That's simply how Congress has decided to form various agencies. Indeed, many statutes vest the secretary with explicit authority to both make rules, initiate proceedings, and adjudicate them. That's well understood and established. And that's why their claims fail on the merits. They haven't shown irreparable harm. And this Court properly denied a state pending appeal, and it may properly affirm the District Court's denial of a preliminary injunction. For those reasons, we would ask you to affirm. All right. Thank you for your argument. Thank you. We'll hear Rebello. Thank you, Your Honors. Mr. Aguilar, starting with Article III, Mr. Aguilar said, let's take the judges and justices at their word, Justice Bradley, Judge Day, et cetera. I'm happy to do so. In American Washboard, the Sixth Circuit case that he cited, quote, there are numerous cases in the reports upon the subject of unfair competition in trade. End quote. That's pages 283 to 284. Of course unfair competition has been known for centuries. What American Washboard was saying, the other case was saying, was there are certain plaintiffs who can bring these cases at certain times. Exactly the same was true in Jharkhasi. Mr. Aguilar also talked about how Congress passed the FTC Act because the common law was not seen as comprehensive enough, broad enough. Exactly the same was true in Jharkhasi. Indeed, everything Mr. Aguilar said, I submit, about Article III could have been said, and indeed was said, for the most part, in Jharkhasi itself. The bottom line point on Article III, there simply is no binding precedent that rejects our Article III argument. That does include this Court's decision in Arkansas Wholesale. Yes, it referred to constitutionality, but it's not just the absence of reference to Article III. There is specific mention in the case to due process. It is a due process case, as I said, before the district court here. We're not aware of any case in 100 years that has read it as being an Article III case. On Article II, Mr. Aguilar didn't address my point that their whole argument about compensable harm improperly imports remedy into the likelihood of success analysis, so you don't even get to this whole issue of Collins versus Yellen. But in any event, our point is we have satisfied whatever harm requirement Collins imposes and body imposes by showing irreparable harm from being subjected to the unconstitutional agency proceeding under Axon. And the FTC has tried to distinguish Axon as saying that's about jurisdiction. Even the district court here rejected that argument, recognized there is no sensible explanation for how Axon could be right about what it said about jurisdiction and yet it not be irreparable harm for purposes of a preliminary injunction to be subjected to an agency proceeding, an unconstitutional agency proceeding. Mr. Aguilar also mentioned severance. That argument is waived. Severance is never mentioned anywhere in their brief period. It is mentioned in their Rule 28J letter about space exploration. That's too late in any event. The question is not what would we be entitled to later. The question is are we entitled to a preliminary injunction now to freeze the status quo to avoid irreparable harm while our claims are being adjudicated. Finally, on due process, it's not 12 or 13 to zero. It's 30 to zero going back 25 years, and it's not just the statistics in internal adjudications. The key point is that the FTC has fared far worse when it has brought claims in an Article III court where, of course, it does not get to judge the merits of its own allegation. There is instead a truly neutral arbiter. I ask this Court to reverse the district court's denial of a preliminary injunction. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course.